CAL J. POTTER, III, ESQ.
Nevada Bar No.1988
C. J. POTTER, IV, ESQ.
Nevada Bar No. 13225
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada 89102
Tel: (702) 385-1954
Fax: (702) 385-9081
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

COURTNEY ROGALSKI and
WESTLEY MCNEAL,

    Plaintiffs,

v.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a Political Subdivision of the STATE OF NEVADA; Detective JEFFREY TABOR, P#4912, individually; Sergeant RODERICK HUNT, individually; Lieutenant DENNIS FLYNN #3028, individually; Officer WILLIS SYLVA P#4080, individually; and DOES I-XX

    Defendants,
_____/

CASE: 2:15-CV-01821-JCM-VCF

**SECOND
AMENDED COMPLAINT
(Jury Trial Demanded)**

    COMES NOW, Plaintiffs, COURTNEY ROGALSKI and WESTLEY MCNEAL, individuals, by and through their attorney of record, CAL J. POTTER, III, ESQ. and C. J. POTTER, IV, ESQ., of POTTER LAW OFFICES, and for their causes of action against the Defendants, and each of them, jointly and severally, asserts and alleges as follows:

**PARTIES**

    1.    Plaintiff, Courtney Rogalski, an individual, is, and at all times herein mentioned was, an individual residing in the State of Nevada.

    2.    Plaintiff, Westley McNeal, an individual, is, and at all times herein mentioned was, an individual residing in the State of California.

. . .

3.     Plaintiffs are informed and believe and based thereon alleges that Defendant Las Vegas Metropolitan Police Department (hereinafter "LVMPD"), is, and at all times herein mentioned, a government entity located and operating in Clark County, Nevada.

4.     Defendant Detective Jeffrey Tabor P#4912 at all material times was employed as a Detective with LVMPD, and was acting within the course and scope of that employment. Defendant Detective Jeffrey Tabor is being sued in his individual capacity.

5.     Defendant Sergeant Roderick Hunt at all material times was employed as a Sergeant with LVMPD, and was acting within the course and scope of that employment supervising Detective Jeffrey Tabor. Sargent Roderick Hunt is being sued in his individual capacity.

6.     Defendant Lieutenant Dennis Flynn P#3028 at all material times was employed as an Officer with LVMPD, and was acting within the course and scope of that employment. Flynn is being sued in his individual capacity.

7.     Defendant Officer Willis Sylva P#4080 at all material times was employed as an Officer with LVMPD, and was acting within the course and scope of that employment. Officer Sylva is being sued in his individual capacity.

**JURISDICTION**

8.     The events and circumstances which are the subject of this lawsuit occurred within the County of Clark, State of Nevada.

**FACTS COMMON TO ALL CAUSES OF ACTION**

9.     On August 30, 2013, Plaintiff Courtney Rogalski's home was searched by detectives with the Las Vegas Metropolitan Police Department and the LVMPD SWAT Unit. Plaintiff, Westley McNeal was a guest at Ms. Rogalski's home.

10.    The search was conducted with a search warrant that was signed by Justice Court Judge Cynthia Cruz on August 29, 2013.  The search was conducted and 382 grams of marijuana were found and 32 marijuana plants (16 mature flowering and 16 immature). Ms. Rogalski was arrested and charged with Possession of a Controlled Substance, Marijuana and Possession of a Controlled Substance with Intent to Sell, Marijuana.

11. Ms. Rogalski, at the time of her arrest, held a valid medical marijuana card and had a valid Medical Marijuana Waiver which allowed her to have in her possession, custody and control 15 ounces of useable marijuana and 49 marijuana plants.

12. The Search Warrant used in the search of Plaintiff's Rogalski's home lacked sufficient probable cause to justify the search after removing false and misleading statements pursuant to Delaware v. Franks.

13. The malicious prosecution against Plaintiff Rogalski was dismissed because she was acting within the law, was a registered Medical Marijuana patient with a valid Medical Marijuana Card and a valid Medical Marijuana Waiver. She did not exceed the amounts contained in her Medical Marijuana Waiver and this fact was not disputed by the Defendants.

14. The Search Warrant was authored by Defendant Detective Jeffrey Tabor. Detective Tabor is a member of the Las Vegas Metropolitan Police Department and at the time of the search warrant was assigned to the "HIDTA SCORE Task Force" and was acting in his course and scope as a police officer with Defendant LVMPD.

15. According to the search warrant, on May 17, 2013 Detective Tabor "established surveillance" on Advanced Gardens Hydroponics located at 7850 Dean Martin, Las Vegas, Nevada. Advanced Gardens Hydroponic is apparently some type of a business that allegedly sells items used in the cultivation of marijuana. (This would also be true for Wal-Mart, Home Depot, Lowes, K-Mart, Target, etc). While conducting surveillance at Advanced Gardens Hydroponic a vehicle pulled into the store and removed a 50 pound $CO_2$ tank from the rear of the vehicle and 5 minutes later put a new $CO_2$ tank back into the vehicle. The vehicle was then followed to a gated community where surveillance was terminated.

16. A records check revealed that the vehicle was registered to the Plaintiff, Courtney Rogalski with an address of 8584 Peaceful Dreams, Las Vegas, Nevada 89139. The purchase of the $CO_2$ tank took place on May 17, 2013.

17. Approximately 3 months later, Defendant Detective Tabor issued an Administrative Subpoena to Nevada Energy. The Nevada Energy power comparison with Ms. Rogalski's home and for three homes in the neighborhood which were allegedly residences

with the "exact same square footage" showed that the Plaintiff's home used an average of 3,698 kilowatts more a month than the other three comparison houses in the private gated community.

18. There is nothing in the Search Warrant to indicate whether the other three houses were occupied, who occupied them and the amount of residents in the other three houses. There is nothing in the search warrant to indicate how many individuals were living at the Plainitff's residence, whether the other residences had a swimming pool, jacuzzi or any other factors whatsoever to justify a power increase or decrease.

19. On August 27, 2013 Defendant Detective Tabor allegedly "drove past" the Plaintiff's residence and allegedly observed the windows on the east side of the residence to be covered with a heavy white plastic material and that one of the hanging vertical blinds seemed to be pressed against the window. On August 27, 2013 another LVMPD Detective "walked past" the Plaintiff's residence and noted that the residence was totally dark with no lighting illuminating from the inside of the residence. This was apparently done during the "late evening hours".

20. The Affidavit of Defendant Detective Tabor is approximately 10 pages long and contains numerous paragraphs that have absolutely nothing to do with the criminal case involving Plaintiff Rogalski.

21. The following are the only facts that relate to the insufficient probable cause finding in this case:

    a. A vehicle registered to the Defendant purchased a 50 pound $CO_2$ tank on May 17, 2013.

    b. There was a power comparison that indicated that the Plaintiff's home was utilizing more power than three other residences in the neighborhood.

    c. Three months after the alleged purchase of the $CO_2$ tank a detective "drove past" the Plaintiff's residence and allegedly saw a heavy white plastic material covering a window and/or windows.

        d.        Three months after the alleged purchase of the C02 tank, a detective "walked past" the Defendant's house "in the late evening hours" and no lights were on.

22.    The Search Warrant also notes that the Plaintiff, Courtney Rogalski had a valid Medical Marijuana Registration Card and that she was legally allowed to posses and cultivate marijuana. It should also be noted that because she has a valid marijuana card that the LVMPD had no reason to arrest a guest found in her house, Plaintiff Westley McNeal.

23.    There was no controlled buy in the underlying criminal case, there was no odor or smell of marijuana coming from the residence, there was no foundation for the power comparison analysis and as can readily be seen after a reasonable review of the Search Warrant Affidavit, there was absolutely no probable cause to support the issuance of a search warrant in the criminal case.

24.    The fact that a home was "totally dark" in the "late evening hours" on one occasion when a Defendant from LVMPD allegedly "walked past" the residence is of absolutely no consequence and is not a fact that should be considered for probable cause. The fact that an individual may have plastic material covering at least one of their windows is of no consequence and cannot be used to support a search warrant. (NRS 453A.300(d)(1) - specifically provides that legal marijuana use or cultivation cannot be exposed to public view). The power comparison lacked any foundation whatsoever.

25.    The fact the a CO2 tank was purchased 3 months earlier by a person driving a vehicle registered to the Plaintiff is of no consequence and cannot be utilized in support of probable cause for a search warrant.

26.    The fact that Plaintiff Rogalski had a verified valid Medical Marijuana Card and was a registered Medical Marijuana user would clearly explain all of the above facts and would not show anything illegal or even a suspicion of illegal activity at the Plaintiff's residence to support the issuance of a search warrant.

27.    The Defendants acted pursuant to a de facto policy to disregard whether a person has a valid medical marijuana card and whether the person has a valid waiver from a

5

1  licensed doctor. The illegal arrest resulted in guns pointed in their face, ordered out of her
2  home, handcuffed, and then had their home essentially destroyed by LVMPD and other
3  members of the Las Vegas Metropolitan Police Department all because the Plaintiff has a valid
4  Medical Marijuana Card, does not give the Defendants the right to tear down her door, destroy
5  her house and confiscate essentially all of her belongings under the disguise of a valid search
6  warrant.

7    28.  The Defendants found 32 marijuana plants. (16 mature flowering and 16
8  immature) in the Plaintiff's residence and 382 grams (approximately 13 ounces) of marijuana.

9    29.  Plaintiff Rogalski was a Medical Marijuana Card holder that was received
10 from a licensed physician in the State of Nevada, Kathleen D. Smith, M.D. As can be seen by
11 the recommendation of the physician, Ms. Rogalski was allowed to produce and possess 49
12 plants at any given time and at least 15 ounces of useable marijuana.

13   30.  Defendant Detective Tabor was shown the Waiver Form that was signed by Dr.
14 Smith, he and his co-defendant tore up the Waiver, threw it away and informed the Plaintiff
15 that it was of no legal significance.

16   31.  NRS 453A.310(a)(3) specifically states that a person with a chronic or
17 debilitating medical condition can have in excess of the amount described in NRS 453A.200 if
18 the person proves by a preponderance of the evidence that the greater amount is medically
19 necessary as determined by the person's attending physician to mitigate the symptoms of the
20 person's chronic or debilitating medical condition.  Plaintiff Rogalski was 100 % within her
21 rights to possess the marijuana and the plants in this case and the Detectives should not have
22 ripped up and thrown away her Medical Marijuana Waiver. In addition NRS 453A.310 does
23 not set any limit on the amount of marijuana that a medical provider can prescribe to a patient.

24   32.  NRS 453A.310 is typically ignored and disregarded by the defendant of the Las
25 Vegas Metropolitan Police Department.

26   33.  Defendants falsely imprisoned both Plaintiffs within the Clark County Detention
27 Center, and illegally confiscated Plaintiff Rogalski's legal grow equipment and marijuana. The
28 Defendant LVMPD then destroyed Plaintiff's property and has refused to compensate Plaintiff

1  Rogalski for the loss of her personal property and the damage to her residence all to her
2  damages in excess of Seventy Five Thousand Dollars ($75,000.00).
3      34.   Plaintiff McNeal was arrested without probable cause, a constitutional violation,
4  and the District Attorney of Clark County refused prosecution in the arrest of Plaintiff McNeal.
5      35.   After Defendant LVMPD released Plaintiff NcNeal, Defendant LVMPD
6  continued to follow and harass Plaintiff McNeal.

**FACTS ON PLAINTIFF ROGALSKI'S CRIMINAL CHARGES**

8      36.   At the time of the Preliminary Hearing that was brought by Defendant Detective
9  Tabor, Defendant Detective Tabor testified that he does not pay any attention to the doctor's
10 waiver; specifically even though Plaintiff Rogalski has a legal marijuana waiver from a duly
11 licenced medical doctor who was permitted to issue a waiver for the number of plants that
12 Plaintiff Rogalski could possess as a card carrying medical marijuana patient. In addition.
13 Defendant Detective Tabor further testified that the practice of the LVMPD to not call doctors
14 even though the plaintiff had a facially valid medical marijuana card and a facially valid waiver
15 and suffered from a debilitating disease.
16     37.   Defendant, Detective Tabor also testified under oath that he was not aware that
17 a medical marijuana patient is not to have the marijuana plants in plain view pursuant to NRS
18 453A.200. Indeed Defendant Detective Tabor erroneously stated in his affidavit for a search
19 warrant that one factor supporting probable cause was that the window to the house has opaque
20 coverings. However, this factor was in actuality exculpatory within NRS 453A.200.
21     38.   Defendant Detective Tabor also testified that right after the search and seizure
22 all of the plants and equipment are destroyed.

**DECEMBER 2013 § 1983 CAUSE OF ACTION FOR PLAINTIFF MCNEAL**

24     39.   In December 2013, Plaintiff McNeal experienced additional retaliatory conduct
25 from a Detective Flynn #3028 and a Officer Sylva after his arrest in August 2013.
26     40.   In December, 2013 the Defendants Flynn and Sylva further retaliated against
27 Plaintiff McNeal after the August 2013 charges where denied for prosecution by the Clark
28 County District Attorney's Office.

41. Mr. McNeal was driving from his girlfriends home to his home in California. Plaintiff McNeal was followed for several miles by a dodge charger. The LVMPD Internal Affairs identified the two individuals as Defendants Flynn and Sylva. On information and belief that Defendant Flynn is the individual that stopped Plaintiff McNeal with a gun and pointed it at Plaintiff McNeal.

42. Defendant Flynn kept changing his story after he had handcuffed Plaintiff McNeal and had him kneeling by his car. Defendant Flynn accused Plaintiff McNeal of committing a robbery, burglary and finally speeding. Plaintiff McNeal in fear for his life just asked Defendant Flynn and Sylva to take him to jail even though he had not committed any crime. Defendant Sylva claimed that Metro had Plaintiff McNeal's girlfriend in custody. Defendant Sylva then called and talked to Plaintiff McNeal's girlfriend. Ultimately, Plaintiff McNeal was un handcuffed and released with no citation.

**FIRST AND SECOND CAUSES OF ACTION**

**VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983**

41. Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

42. By the actions and omissions described above, Sergeant Roderick Hunt and Detective Jeffrey Tabor, Lieutenant Dennis Flynn and Officer Sylva as well as other officers employed by or acting on behalf of Defendant LVMPD, violated 42 USC § 1983, depriving Plaintiffs and each of them of the following clearly established and well-settled constitutional rights protected by the Fourth, and Fourteenth Amendments to the United States Constitution:

   a. The right to be free from unreasonable search and seizure as secured by the Fourth and Fourteenth Amendments;
   b. The right to be free from unlawful arrest;
   c. The right to Due Process; and,
   d. All other rights as set forth herein.

43. At all times herein each Defendant was acting under the color of law.

. . .

8

44. Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of the Plaintiffs, and others would be violated by their acts and/or omissions.

45. As a direct and proximate result of Defendants' act and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth above, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

46. The conduct of Defendants, in their individual capacities, and Does 1-10 entitles Plaintiffs to punitive damages and penalties allowable under 42 USC §1983 and applicable Nevada Statutes in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

47. Plaintiffs are also entitled to costs and attorneys fees under 42 USC § 1988 and applicable Nevada statutes in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

**THIRD CAUSE OF ACTION**

**MONELL CLAIM/MUNICIPAL LIABILITY PURSUANT TO 42 U.S.C. § 1983**

48. Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

49. The unconstitutional actions and/or omissions of Sergeant Hunt and Detective Tabor were pursuant to the following customs, policies, practices, and/or procedures of LVMPD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy-making officers of LVMPD:

  a. To tolerate the failure to adequately investigate criminal allegations, particularly medical marijuana waivers;

  b. To tolerate and allow the unlawful arrests of citizens;

  c. To fail to use appropriate and generally accepted law enforcement procedures in handling criminal allegations;

  d. To fail to properly investigate crime scenes and preserve exculpatory evidence;

. . .

   e. To deny citizens their right to Due Process and other constitutional rights as set forth herein before destroying property without a court order;

   f. To cover-up violations of constitutional rights by any or all of the following:

     i. By failing to properly investigate medical marijuana cards and waivers ;

     ii. By ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity;

     iii. By allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements, by withholding and/or concealing material information;

   g. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and,

   h. To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing allegations concerning the cultivation of marijuana.

   i. To fail to discipline poorly performing officers.

50. These policies, practices, and customs caused the violations of Plaintiffs' civil rights as described above, and incorporated herein by reference.

51. Defendant Detective Tabor as well as other officers employed by or acting on behalf of Defendant LVMPD, acted with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described above and when Defendant Detective Tabor refused to contact Dr. Kathleen Smith to discuss Plaintiff Rogalski's medical marijuana card and waiver for additional plants.

52. The unconstitutional actions and/or omissions of Defendant Detective Tabor, as well as other officers employed by or acting on behalf of Defendant LVMPD, as described above, were approved, tolerated, and/or ratified by policy-making officials of LVMPD. Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the authorized policy makers within LVMPD, and that such policy makers have direct knowledge of the fact that the arrest of Plaintiffs was not justified. Notwithstanding this knowledge, the authorized policy makers within LVMPD have approved Plaintiff's arrest and the basis for that arrest. By so doing, the authorized policy makers within LVMPD have shown affirmative agreement with the individual defendant officers' actions, and have ratified the unconstitutional acts of the individual defendants.

53. The aforementioned customs, policies, practices, and procedures, the failures to adequately discipline, as well as the unconstitutional orders, approvals, ratification and toleration or wrongful conduct by Defendants LVMPD, and Does 1-10, were a moving force and/or proximate cause of the deprivations of Plaintiffs' clearly-established and well-settled constitutional rights in violation of 42 USC § 1983, as more fully set forth above.

54. Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

55. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures. Defendants LVMPD, and Does 1-10 as described above, Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorney fees as set forth above, and punitive damages against Defendants in their individual capacities in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

. . .

. . .

. . .

11

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

56. Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

57. Employees of Defendants LVMPD in committing the acts alleged herein, acted within the course and scope of their employment.

58. Defendants owed Plaintiffs a duty to use ordinary care and/or skill to not unlawfully detain and/or arrest Plaintiffs, unlawfully search Plaintiff Rogalski's house, unlawfully seize Plaintiff Rogalski's property, unlawfully fail to secure exculpatory evidence, and unlawfully fail to preserve the items and unlawfully seize and deploy excessive force upon Plaintiff McNeal.

59. Defendants LVMPD owed Plaintiffs a duty to use ordinary care and/or skill in the hiring, training, supervision and retention of their employees so as not to cause, or allow their employees to cause Plaintiffs to suffer emotional property loss, pain and suffering, and loss of personal property.

60. In committing the acts alleged herein above, and negligently permitting its employees and agents to commit these acts, Defendants breached their duties owed to Plaintiffs.

61. As a direct and proximate result of the Defendants' negligent actions, Plaintiffs have been injured in mind and body and sustained constitutional violations, all to Plaintiffs' damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

62. At all relevant times, Defendants knew or should have known that negligence, or reckless disregard of Plaintiffs' rights, and was dangerous and could lead to Plaintiffs' damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

. . .

. . .

. . .

. . .

## FIFTH CAUSE OF ACTION
## FALSE IMPRISONMENT

63. Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

64. Defendant Detective Tabor and LVMPD intended to confine Plaintiffs within boundaries fixed by Defendants.

65. Defendants' acts directly resulted in confinement of Plaintiffs.

66. Plaintiffs were conscious of the confinement and were harmed by said confinement.

67. Plaintiffs suffered injuries and emotional distress, including humiliation, indignity and disgrace, and pain and suffering.

68. Defendants' conduct of arresting Plaintiffs without legal probable cause constitutes false arrest and false imprisonment.

69. As a direct and proximate result of Defendants conduct, Plaintiffs have incurred special and general damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

70. Defendants' conduct was committed intentionally, maliciously, and with conscious disregard to the constitutional rights of Plaintiffs warranting the imposition of punitive damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) against Defendant Detective Tabor.

80. As a further result of Defendants' conduct, Plaintiffs have had to retain the services of attorneys in this matter, and therefore, seeks reimbursement for attorney's fees and costs in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## SIXTH CAUSE OF ACTION
## MALICIOUS PROSECUTION

81. Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

. . .

82. Defendant Detective Tabor and LVMPD initiated, procured the institution of and actively participated in the continuation of a criminal proceeding against Plaintiffs.

83. Defendants lacked probable cause to commence said proceeding.

84. Defendants acted with malice toward Plaintiffs.

85. The criminal proceeding terminated in Plaintiffs' favor.

86. Plaintiffs suffered injury to her reputation, humiliation, embarrassment, mental suffering, financial damages, and inconvenience, all proximately caused by Defendants' actions.

87. As a direct and proximate result of the malicious prosecution and the gross negligence and carelessness and other improper conduct of Defendants, and each of them, Plaintiffs are entitled to special damages that Plaintiffs incurred and punitive damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

88. As a further result of Defendants' conduct, Plaintiffs have had to retain the services of attorneys in this matter, and therefore, seeks reimbursement for attorney's fees and costs in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

89. Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

90. Each and every Defendants' conduct described herein, including but not limited to falsely arresting Plaintiffs, falsely imprisoning Plaintiffs, and failing to obtain and preserve evidence was extreme and outrageous causing Plaintiffs to suffer emotional distress.

91. As a direct and proximate result of Defendants' intentional infliction of emotional distress upon Plaintiffs, Plaintiffs have incurred special and general damages in an amount to be shown at trial, and are further entitled to punitive damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) against Defendant Detective Tabor individually.

. . .

92. That as a direct result of the acts and omissions of the Defendants, and each of them, Plaintiffs were caused to suffer physical and mental injury, pain and suffering, and severe emotional distress and other related costs, including but not limited to attorney fees in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For general damages in the amount in excess of Seventy Five Thousand Dollars ($75,000.00).
2. For reasonable attorneys' fees, costs and interest thereon as permitted by law;
3. For exemplary and punitive damages in an amount deemed adequate to punish and make example of the individual Defendants, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00); and
4. For such other and further relief as the Court may deem just and proper.

DATED this 30th day of September, 2015.

POTTER LAW OFFICES

By /s/ Cal J. Potter, III, Esq.
CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
C. J. Potter, IV, ESQ.
Nevada Bar No. 13225
1125 Shadow Lane
Las Vegas, Nevada  89102
*Attorneys for Plaintiffs*